## BECHIK v. HANDY MATTRESS ACCESSORIES CORPORATION.

### No. 2257.

District Court, E. D. New York.

May 9, 1942.

See, also, 2 F.R.D. 289.

Ralph F. Merchant, of Minneapolis, Minn. (Morris Kirschstein, of New York City, of counsel), for plaintiff.

Frederick W. Scholem, of New York City (Harry Ernest Rubens, of New York City, of counsel), for defendant.

BYERS, District Judge.

This is a patent infringement suit involving plaintiff's patent No. 2,105,580, granted January 18, 1938, on application filed June 7, 1935. The complaint also pleads No. 2,248,328, granted July 8, 1941, on application filed May 19, 1939. Plaintiff elected to withdraw this with prejudice because of its being thrown into interference after the complaint was filed on September 16, 1941.

The defendant is alleged to be a secondary infringer, in that it sells the component elements of the patented structure unassembled, to mattress manufacturers, in the effort to displace the plaintiff's product.

That is denied, and validity is in issue.

### Findings.

1. This court has jurisdiction of the cause which arises under the patent statutes, and of the parties.

2. Plaintiff is the patentee named in U. S. Letters Patent No. 2,105,580 for a handle, granted to him January 18, 1938 (application June 7, 1935) and he makes and sells the patented device to mattress manufacturers who affix the elements to the side walls of mattresses, and assemble them, according to the plaintiff's instructions, thereby forming handles in the sides of mattresses to facilitate turning.

3. Claims 4 and 5 are in suit, namely:

"4. A flexible handle including, a flexible resilient reinforcing bar member, means for attaching said bar to the inside of a flexible wall, and a flexible handle means lying flat along the outside of the wall and anchored at its ends to the means for securing said flexible bar, the resiliency of said flexible bar normally stretching said flexible handle means taut.

"5. The combination of a soft flexible mattress or cushion wall, a flexible reinforcing bar extending along the inside of said wall and fixed thereto and a flexible handle on the outside of said wall and extending parallel to said reinforcing bar with its ends anchored to the ends of said bar, to direct the load on the handle to the ends of said bar, said bar flexing to permit the wall to bend to receive the hand while engaging said handle and having a spring action to straighten said handle flat against the outside of the wall when not engaged."

4. Plaintiff's device when assembled is a handle for mattresses, consisting of a resilient flexible bar with means for attaching it to the interior wall of a mattress, a flexible handle lying flat on the outside of the mattress wall, which is affixed or anchored at each end to the means which so attach the said resilient flexible bar; the resilient quality of the bar stretches and holds the flexible handle taut, and also admits of the insertion of the hand of a user between the flexible handle and the outer wall of the mattress, so that the mattress may be lifted or turned by the use of the handle as so constituted.

5. The prior art does not disclose such a mattress handle.

6. The plaintiff's structure embodies patentable invention over any invention, patented or otherwise, upon which the defendant relies as disclosed by its evidence in this case.

7. The defendant makes and sells a precise copy and counterpart of the plaintiff's device as described in Finding 4 above, namely, a set of elements consisting of a resilient flexible bar, means for attaching it to the interior wall of a mattress, and a flexible handle to be affixed or anchored at each end to the means for attaching the said bar to the interior of the mattress wall; and solicits sales thereof upon the representation that the device, when assembled and attached, is the same thing as the subject matter of the plaintiff's patent.

8. Prior to so making and selling the said device, the defendant was a jobber of the plaintiff's structure pursuant to defendant's solicitation.

## Conclusions of Law.

I. Plaintiff's said patent No. 2,105,580, as to claims 4 and 5, is valid.

II. Defendant is a secondary infringer thereof, in that it makes and sells to mattress manufacturers a precise and complete counterpart of the plaintiff's patented structure.

III. The plaintiff is entitled to a decree enjoining the defendant, etc., from making and selling mattress handles made in accordance with or embodying the invention of Claims 4 and 5 of United States Letters Patent No. 2,105,580, with costs, etc., as prayed in the complaint, and for an accounting of profits and damages.

## Opinion.

The question of validity is close, and will gain little by discursive comment. Handles are old, and mattress handles are not of exceptional characteristics, and would not seem to excite patentably inventive concept. Such was the first impression made by this case.

It appeared, however, that the extended use of interior spring mattresses, commencing ten or more years ago, resulted in the production of an article weighing from 70 to 90 pounds, and that the use of fabric strips as handles, sewn on the outside and made of the mattress material, was not satisfactory, because such grips soon tore loose, and thus a firmer and more durable device had to be substituted.

The plaintiff, being a foreman in a mattress factory and later superintendent, sensed the problem as early as August 19, 1932, when he filed his application for his first patent, which was granted August 20, 1935, as No. 2,011,747.

He started his own business the following year, and the second patent, being the one in suit, No. 2,105,580, was granted as has been stated. His third patent is the one which has been withdrawn.

The defendant contests validity in part upon the ground that an estoppel arises by reason of the limited grant of the first patent and the failure to claim a flexible back bar in that application.

It will be convenient to discuss these matters briefly, because if anticipation has been shown, and if the patent in suit is objectionable because of double patenting as the defendant asserts, and if Olson No. 1,875,121 and three other patents anticipate, the defendant should prevail.

The plaintiff's patent, as to the claims in suit, was adjudicated valid and infringed in the United States District Court, District of Minnesota, Fourth Division, by Judge Nordbye, on January 29, 1940, in Bechik v. Restful Mattress Co. and Flexible Tuft Corp.[1] (No. 150 Civil), and the decision herein has been much aided by his discussion of the question of patentable invention. In that suit the real defendant was Flexible Tuft Corporation, whose president, Charles A. Light, was a defendant's witness in this cause. He was not asked to point out any substantial difference between his handle and that of this defendant (Ex. 6) and it is a fair inference that there was none. (Ex. 4 so indicates.)

---

[1] No opinion for publication.

Defendant argues that plaintiff's first patent, No. 2,011,747, in effect claimed a flexible (nothing said about resilient) bar which was rejected, and that acquiescence in that action created an estoppel against the application for the second patent, which is in suit. That argument is not sustained by the file history.

The necessity for insuring space between the outer flexible handle and the outer wall of the mattress, for the insertion of the user's hand, was met by offsetting or curving a rigid inner bar for most of its length, so that the wall of the mattress would fit into the recess so created, once the hand was inserted between the flexible handle and the mattress. The comment of the Examiner, that the Olson bar would be capable of flexing inwardly, did not operate to the contrary. Incidentally that was untrue, as appears from the sample of the Olson handle in evidence (Ex. 15), from which it is seen that the bar does not flex but rests rigidly on supporting springs mounted on posts constituting the ends of the bar, which protrude about 1½ inches into the mattress and hence may engage the mattress springs so as to defeat the object sought to be accomplished.

The original claims, and those finally allowed, taught a rigid bar, not a flexible and resilient bar, and no estoppel against the patent in suit arose as the result of any office action or omission.

The argument was probably designed to avoid the decision of Judge Nordbye that the first Bechik patent did not anticipate the second. In that I agree; the resilient and flexible bar was evolved so that, in its extended position, the outer flexible handle would be held flat against the mattress, and not sag with use, as experience demonstrated that it would under the earlier structure. Being flexible, it yielded when the hand was inserted under the cord, enabling the mattress wall to follow inwardly and thus afford a gripping recess between the handle cord and the mattress wall.

That step may not be deemed of heroic or epic stature in the development of mattress handles, but it required some mental effort for its accomplishment. If this were a dispute between inventors, the issue would be more doubtful than it is. This defendant is obviously trying to purloin the result of another man's efforts, and is scarcely in a position to minimize that which he seeks to appropriate.

The balance of the defendant's criticism of the patent in suit, based upon the solicitation thereof and the file-wrapper history, has been considered and found not to be persuasive.

The patents offered in evidence to demonstrate anticipation fail of their purpose: Olson No. 1,875,121, is a mattress handle (Ex. 15) lying flat against the outer surface; when it is used, the handle is pulled away from the mattress because its ends are posts which project into the mattress structure about 1½ inches. Spiral springs engage the flanged end of each post, and also an inner rigid plate which extends uniformly beyond the post holes in the mattress wall, but is not fastened thereto. When the handle is idle, the spiral springs are extended and hold the plate in contact with the inner wall of the mattress; when it is desired to use the handle, it is pulled away from the outer wall of the mattress a sufficient distance to admit of grasping. This action is possible by the outward movement of the posts constituting the handle ends, against the spiral springs, which are compressed; when the handle is released by the user, it moves back to close engagement with the outer wall of the mattress, and the posts move back into the mattress structure, through the rebound of the spiral springs.

In other words, a recess for the fingers used in grasping the handle is not formed in the mattress wall. The office of the plate inside the mattress is to hold the spiral springs in engagement at the posts, and perhaps to form a stable platform on the inner side of the mattress and directly under the handle.

Olson's patent is for a handle that moves outwardly, the mattress wall not playing any part in affording space for grasping. Bechik's handle is flexible, but does not move appreciably away from the mattress; the latter recedes into a space created by the resilient inward movement of the bar which cooperates with the ends of the flexible handle, so that together they form the working unit. That is, the two devices embody dissimilar mechanical concepts, and Olson does not teach that which Bechik embodies in his patent.

Morton No. 1,158,707 is for a handle attachment to paper boxes, the surface of which under the handle is of course rigid, and the grasping space is available without reference to that surface; the same remark applies to Mitchell No. 1,-

958,587, for a handle for carrying portable cabinets, cases, etc. Behrman No. 1,616,946 is for marking tickets to be attached. to fabrics. Its citation is in connection with the means for attaching the ends of the flexible handle without removing the inner plate, as taught by the plaintiff's third patent, not in suit.

Upon this showing, the question of validity is resolved in plaintiff's favor.

As to infringement, it is clear that defendant is liable as a secondary infringer, unless the argument is to prevail that relief must be denied to plaintiff because he is seeking. to extend his patent so as to forbid the sale of unpatentable things, namely, the bar, the flexible handle, and the grommets which are the means for holding the assembled elements into an operable handle.

That the defendant sells these elements together and for the purpose of inducing mattress manufacturers to buy and use them in preference to the plaintiff's product, and at a lower price, is so clearly established by the evidence as to admit of no question.

If the plaintiff's structure were capable of sale and use in assembled form, and the defendant was selling the same thing, there would be no doubt about infringement. Is that result to be avoided because the patented device is of such a nature that it can be sold only as a combination of elements that must be put together by the manufacturer of mattresses in order to function? An affirmative answer to that question would mean that the ‛plaintiff cannot protect his patent against infringement. If such a result is to be reached, it must be elsewhere declared.

The distinction between this case and all those cited by defendant which stem from Carbice Corp. v. American Patents Development Corp., 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819, is clear. This plaintiff is not seeking to extend his patent for a certain type of mattress handle by requiring that all dealers in bars, grommets and flexible cord be forbidden to sell their products to the users of his device. He is simply seeking to prevent this defendant from infringing his patent by selling the ᵥsame device (Ex. 6), and to that relief he is entitled. This is not a process or method patent as in Philad Co. v. Lechler Laboratories, 2 Cir., 107 F.2d 747; Leitch Mfg. Co. v. Barber Co., 302 U.S. 458, 58 S.Ct. 288, 82 L.Ed. 371, and B. B. Chemical Co. v. Ellis, 314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. ——, in which the patentee sought to prevent the use of his method or process save through the agency of unpatented articles as to which he endeavored to monopolize the sale.

Each case calls for adjudication as the evidence presents the issues, and the facts here examined are believed to require judgment for the plaintiff on the question of infringement.

There remain for disposition two questions of practise. The plaintiff's motion, to withdraw patent No. 2,248,328 with prejudice, is granted.

The defendant moved at the opening of the case to amend its answer by asserting a counterclaim wherein it seeks a declaratory judgment that each of plaintiff's patents Nos. 2,011,747, 2,105,580 and 2,248,328 be adjudged invalid, and noninfringed by the defendant and its customers; that defendant's products are unpatentable, and their sale or use do not infringe plaintiff's patents; that plaintiff should be denied relief for employing its patents to suppress competition in the unpatented material of the elements; that the defendant have an injunction against plaintiff's claim of infringement; from filing suits against defendant's customers, and for an accounting of profits and damages, and counsel fee in this and in any actions against customers which the defendant shall be called upon to defend. Decision was reserved on this motion, and will now be announced.

As the case has developed, there can be nothing gained or lost by granting the defendant's motion for a declaratory judgment as to the first two patents, and to that extent it is granted. There is no evident requirement, however, that the relief extend to the third patent, which was the second one named in the complaint. For reasons which the court is bound to respect as being advanced in good faith, the plaintiff withdrew that tendered issue with prejudice. The defendant withdrew its counterclaim for money damages, at the close of the trial.

The evidence does not disclose any circularization of defendant's customers with respect to patent No. 2,248,328. There was a letter sent on August 22, 1941 (Defendant's Ex. J) concerning patent No. 2,105,580 (the‛ patent in suit) after the validity of the latter had been sustained

in the cause to which reference has been made. In terms, it referred to the defendant's handle as a Chinese copy of plaintiff's patented device covered by Bechik No. 2,105,580; that is true. Reference was made to the said decision; that again was true. The final paragraph reads: "Pending disposal of this infringer by recourse to the courts of law, we will greatly appreciate your cooperating to the extent of refusing to purchase this infringing article."

That was not a threat to any customer of defendant, nor was it an assertion of anything whatever with respect to patent No. 2,248,328.

In the absence of a showing that plaintiff intends to make any unfair use of such rights as it may possess under the latter patent, or indeed that any such rights are now asserted, no reason is shown for invoking Leach v. Ross Heater & Mfg. Co., 2 Cir., 104 F.2d 88, beyond the extent here indicated.

The defendant's case has been examined with critical care, in an attempt to reach a rational decision, and without the court's being aware whether the process was conducted at the urge of the plea for declaratory judgment, or at the behest of the complaint.

A decree is to be settled in favor of the plaintiff, with costs, which is to include a provision permitting the withdrawal of the plaintiff's cause with prejudice as to the second patent pleaded, and for the allowance of the defendant's counterclaim for a declaratory judgment to the extent indicated; and for the appointment of a master in the customary form.